# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| MARK ANTHONY NEWBERRY, | : | Case No. 3:25-cv-00175 |
| Plaintiff, | : | |
| | : | District Judge Michael J. Newman |
| vs. | : | Magistrate Judge Caroline H. Gentry |
| | : | |
| MONTGOMERY COUNTY CHILDREN SERVICES, *et al.*, | : | |
| Defendants. | : | |

## ORDER AND REPORT AND RECOMMENDATION

This case comes before the undersigned Magistrate Judge to rule on several pending matters. For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion to Join City of Dayton as Defendant (Doc. No. 25), **ORDERS** that the Second Amended Complaint (Doc. No. 26) constitute the operative pleading in this matter, and **ORDERS** Plaintiff to perfect service of the summons and Second Amended Complaint **upon the City of Dayton and Montgomery County Children Services ONLY**. The undersigned **RECOMMENDS** that District Judge Newman (1) **DISMISS WITH PREJUDICE** all claims against Defendants McFadden, Davis, Burton, Wilhelm, and Montgomery County Job and Family Services—and certain claims against Montgomery County Children Services—for lack of subject-matter jurisdiction, and (2) **DENY AS MOOT** Plaintiff's remaining Motions (Doc. Nos. 15, 16 & 17).

I.  BACKGROUND

Plaintiff, who is proceeding without the assistance of counsel,[1] filed this civil rights lawsuit in June 2025 against Defendants Montgomery County Children Services ("MCCS"), MCCS Caseworker McFadden, MCCS Supervisor Davis, MCCS Supervisor Burton, and Montgomery County Job and Family Services ("MCJFS"). (Complaint, Doc. No. 3, PageID 30; Amended Complaint, Doc. No. 5, PageID 39-40.) The facts alleged in the Amended Complaint appear to relate to two distinct sets of claims.[2]

First, Plaintiff alleges that on October 22, 2013, Defendant MCCS placed a foster home next to his residence that "was operated by individuals with a known prior history involving children, and this was never disclosed." (*Id*. at PageID 40.) He alleges that "[t]his reckless placement caused severe disruption, fear, and retaliation." (*Id*.) Attached to the Amended Complaint are police reports that allegedly relate to the foster home. (*Id*. at PageID 50-58.) The Court will refer to these allegations as the "Foster Home Claims."

Second, Plaintiff alleges that he regularly cares for his grandchildren and that Defendants MCCS, McFadden, Davis and Burton have subjected him "to retaliatory visits, vague accusations, and psychological pressure." (Doc. No. 5, PageID 41.)

---

[1] The Court notes that although Plaintiff originally sought and was granted permission to proceed *in forma pauperis*, he later paid the full filing fee.

[2] When considering a *pro se* complaint—that is, a complaint filed without the assistance of a lawyer—this Court must liberally construe it and hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This standard may require "active interpretation in some cases [in order] to construe a *pro se* petition to encompass any allegation stating federal relief." *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985). Nevertheless, a *pro se* complaint must adhere to the "basic pleading essentials" and the Court should not have to guess at the nature of the claim asserted." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Instead, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson,* 551 U.S. at 93.

Attached to the Amended Complaint are photographs that allegedly portray a MCCS caseworker and two Sheriff's deputies. (*Id*. at PageID 44-49.) Plaintiff alleges that these photographs "document confrontational and unclear actions by Children Services staff." For relief, Plaintiff seeks a 90-day restriction that prohibits contact by MCCS or its employees, and multi-million-dollar penalties for every visit made by MCCS. (*Id*. at PageID 41-42.) The Court will refer to these allegations as the "MCCS Contact Claims."

Plaintiff subsequently complained that Defendant Guardian Ad Litem (GAL) Jennifer Wilhelm[3] attempted to visit his grandchildren after this lawsuit was filed. (*See* Doc. Nos. 9, 11, 13, 15, 16 & 17.) On July 16, 2025, Plaintiff reportedly told Wilhelm that her attempt to visit his grandchildren in his home violated this federal lawsuit. (Doc. No. 11, PageID 94-100.) In response, Wilhelm reportedly stated that "Judge Julie Bruns ordered I'm permitted to talk to them." (Doc. No. 13, PageID 103.)

On July 28, 2025, Plaintiff filed three Motions relating to Defendant Wilhelm's attempts to visit his grandchildren in his home. First, in his Motion to Deny Immunity Claim and Strike Defense (Doc. No. 15), Plaintiff argues that Wilhelm should not receive any immunity in this lawsuit. Next, in his Motion for Injunctive Relief and Declaratory Judgment (Doc. No. 16), Plaintiff requests an order enjoining Wilhelm "***from enforcing a state court order*** that directly conflicts with the jurisdiction and proceedings of this federal action." (*Id*. at PageID 115 (emphasis added).) Plaintiff explains that the state

---

[3] Although Plaintiff refers to GAL Wilhelm as a "Defendant" in various filings, he did not name her as a Defendant in either the Amended Complaint or the Second Amended Complaint. Nevertheless, the Court will liberally construe Plaintiff's pleadings as naming GAL Wilhelm as a Defendant and will recommend that all claims against her be dismissed with prejudice.

3

court order was issued by Judge Julie Bruns (*id.*), who presides in the Montgomery County Juvenile Court. ***Plaintiff asks this federal Court to declare that it has the exclusive authority to decide all custody-related matters***:

> Plaintiff also seeks a declaratory judgment that the federal court has exclusive jurisdiction over the matters before it, including custody-related investigations that intersect with the claims of constitutional deprivation, defamation, and retaliation. Wilhelm's attempt to act under a state juvenile order, despite explicit notification of this federal proceeding, creates legal confusion and interference.
>
> Such a declaration would clarify that all actions by state officials related to the subject matter of this case must be subordinated to the authority of this Court, and that any contradictory state orders are to be deemed without effect to the extent they conflict with federal proceedings.

(Doc. No. 16, PageID 116.) Finally, in his Supreme Strike Motion to Strip Immunity (Doc. No. 17), Plaintiff reiterates that Defendant Wilhelm should be denied immunity.

On August 7, 2025, the Court issued an Order to Show Cause (Doc. No. 22). In that Order, the Court explained that it cannot decide appeals from state court orders or child custody disputes and must abstain from interfering with pending state proceedings. (*Id.* at PageID 137-38.) The Court noted that "[a]lthough Plaintiff's filings suggest that there are pending state court proceedings, the nature and status of those proceedings are unclear." (*Id.* at PageID 138.) Therefore, the Court ordered Plaintiff to show cause why the Court should not abstain from considering his claims in this lawsuit. (*Id.*)

Although Plaintiff filed a Response to the Order to Show Cause (Doc. No. 23), it did not respond to the issues raised in that Order. On the same day, however, Plaintiff filed a Second Amended Complaint (Doc. No. 26) and a Motion to Join City of Dayton as Defendant (Doc. No. 25) that focus exclusively upon his Foster Home Claims.

## II. PLAINTIFF'S FOSTER HOME CLAIMS

Because Plaintiff paid the filing fee, this Court is not required to screen his *pro se* claims to determine whether they should be dismissed as frivolous or for failure to state a claim upon which relief can be granted. Therefore, Plaintiff may proceed at this time with his Foster Home Claims. However, as no factual allegations support plausible Foster Home Claims against any of the other named Defendants, Plaintiff may only proceed with these claims against the City of Dayton and Montgomery County Children Services.

Accordingly, the undersigned **GRANTS** Plaintiff's Motion to Join City of Dayton as Defendant (Doc. No. 25), **ORDERS** that the Second Amended Complaint (Doc. No. 26) constitute the operative pleading in this matter, and **ORDERS** Plaintiff to perfect service of the summons and Second Amended Complaint <u>**upon the City of Dayton and Montgomery County Children Services ONLY**</u>.

## III. PLAINTIFF'S MCCS CONTACT CLAIMS

Although this Court is not required to screen Plaintiff's *pro se* claims, it is required to determine whether it has subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). For the reasons set forth below, the undersigned concludes that the Court lacks subject-matter jurisdiction over Plaintiff's MCCS Contact Claims. Accordingly, the undersigned **RECOMMENDS** that District Judge Newman (1) **DISMISS WITH PREJUDICE** the MCCS Contact Claims against all Defendants for lack of subject-matter jurisdiction, and (2) **DENY AS MOOT** Plaintiff's remaining Motions (Doc. Nos. 15, 16 & 17), which deal exclusively with the MCCS Contact Claims.

### A. This Federal Court Lacks Jurisdiction Over Plaintiff's MCCS Contact Claims Under the Domestic Relations Exception.

"The domestic relations exception precludes federal courts from hearing cases that 'involv[e] the issuance of a divorce, alimony, or child custody decree.'" *Alexander v. Rosen*, 804 F.3d 1203, 1205 (6th Cir. 2015) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992)). This exception is narrow and only applies if "a plaintiff positively sues in federal court for divorce, alimony, or child custody, ***or seeks to modify or interpret*** an existing divorce, alimony, or child-custody decree." *Id*. (citation omitted, emphasis added). The remedy sought by the plaintiff determines whether the exception applies. *Greenberg v. Slatery*, No. 22-5886, 2023 U.S. App. LEXIS 7334, 2023 WL 2771640, at *2 (6th Cir. Mar. 28, 2023).

Here, Plaintiff has asked this Court to nullify the Juvenile Court's order and prohibit GAL Wilhelm from enforcing that order by conducting home visits. Plaintiff also has asked the Court to impose multi-million-dollar penalties for every visit made by MCCS employees. The nature of the requested relief plainly "seeks to modify" the Juvenile Court order and therefore brings the MCCS Contact Claims within the domestic relations exception. Accordingly, this Court lacks subject-matter jurisdiction over Plaintiff's MCCS Contact Claims.

### B. If the Challenged Juvenile Court Order Is Based Upon a Final Judgment, This Federal Court Lacks Jurisdiction Over Plaintiff's MCCS Contact Claims Under the *Rooker-Feldman* Doctrine.

It is unclear whether the Juvenile Court order that Plaintiff seeks to nullify is based upon a final judgment or involves a pending proceeding. If the challenged Juvenile Court

6

order is based upon a final judgment, then this Court lacks jurisdiction over Plaintiff's MCCS Contact Claims under the *Rooker-Feldman* doctrine. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). Under that doctrine, federal district courts lack jurisdiction over cases filed by litigants who lost in state court and "complain of injuries caused by the earlier state-court judgments." *Exxon Mobil*, 544 U.S. at 284 (cleaned up). As the Sixth Circuit Court of Appeals explained in a similar case:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.

*McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006) (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87-88 (2d Cir. 2005)). A plaintiff cannot avoid this jurisdictional problem "by couching [her] claims . . . in terms of a civil rights action." *Smith v. Lawrence Cnty. Sheriff's Dep't.*, 84 F. App'x 562, 563 (6th Cir. 2003).

Accordingly, if the challenged Juvenile Court order relates to a proceeding that led to a final judgment, then the *Rooker-Feldman* doctrine applies and bars this Court from exercising jurisdiction over Plaintiff's MCCS Contact Claims.

    **C.**    **If the Challenged Juvenile Court Order Was Issued in a Pending Case, This Federal Court Lacks Jurisdiction Over Plaintiff's MCCS Contact Claims Under the *Younger* Abstention Doctrine.**

If, however, the challenged Juvenile Court order was issued in an ongoing case, then the *Younger* abstention doctrine applies. *See Younger v. Harris*, 401 U.S. 37 (1971). Absent extraordinary circumstances, federal courts may not interfere with pending state proceedings by hearing constitutional challenges to those proceedings. Instead, a federal court must abstain under *Younger* from adjudicating a plaintiff's claims where "[1] state proceedings are pending; [2] the state proceedings involve an important state interest; and [3] the state proceeding will afford the plaintiff an adequate opportunity to raise [his] constitutional claims." *Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir. 1995).

Here, assuming *arguendo* that the child custody proceeding is pending, the Court finds that it involves an important state interest and will afford Plaintiff an adequate opportunity to raise any constitutional claims. Accordingly, if the challenged Juvenile Court order was issued in a pending proceeding, then the *Younger* abstention doctrine bars this Court from exercising jurisdiction over Plaintiff's MCCS Contact Claims.

**III.**    **CONCLUSION**

For the reasons stated, the undersigned Magistrate Judge **GRANTS** Plaintiff's Motion to Join City of Dayton as Defendant (Doc. No. 25), **ORDERS** that the Second Amended Complaint (Doc. No. 26) constitute the operative pleading in this matter, and **ORDERS** Plaintiff to perfect service of the summons and Second Amended Complaint **upon the City of Dayton and Montgomery County Children Services ONLY**.

The undersigned further **RECOMMENDS** that District Judge Newman (1) **DISMISS WITH PREJUDICE** all claims against Defendants McFadden, Davis, Burton, Wilhelm, and Montgomery County Job and Family Services—and the MCCS Contact Claims against Montgomery County Children Services—for lack of subject-matter jurisdiction, and (2) **DENY AS MOOT** Plaintiff's remaining Motions (Doc. Nos. 15, 16 & 17), which deal exclusively with the MCCS Contact Claims.

Plaintiff may file objections to these recommendations as discussed in the Notice below.

**IT IS SO ORDERED AND RECOMMENDED.**

*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

**Notice of Procedure on Objections to this Report and Recommendation**

If any party objects to this Report and Recommendation ("R&R"), the party may serve and file specific, written objections to it **within fourteen (14) days** after being served with a copy of it. Fed. R. Civ. P. 72(b). All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections. The Court may extend the fourteen-day objections period if a timely motion for an extension of time is filed.

A District Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations

made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).